UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

D'ANGELO JARMAL OWENS,

               Plaintiff,

                                  Case No. 1:22-cv-443

v.

                                  Hon. Hala Y. Jarbou

ADDIE BRISKE, et al.,

               Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 3.)

Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rule 18, 20, and 21 regarding joinder, the Court will drop Defendants Briske, Mason, Bellinger, Monroe, Holden, Thomas, Johnson, Stone, Amowolo, Jones, Daukfest, Dalton, Clouse, Miseta, Burgess, McCary, Baum, Unknown Party (named as John Doe), and Dankfert and dismiss Plaintiff's claims against them without prejudice.

With respect to Plaintiff's remaining claims, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's Eighth Amendment excessive force claim and First Amendment retaliation claim against Defendant Rucker, and his Eighth Amendment failure to intervene claim against Defendant McGlone, remain in the case.

<u>Discussion</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following individuals at ECF: Warden Unknown Burgess; Assistant Deputy Warden Unknown Clouse; Acting Assistant Deputy Warden Jason Thomas; Resident Unit Manager Unknown McCary; Acting Resident Unit Managers/Prison Counselors Karolyn Holden, Kendra Johnson, and Unknown Miseta; Sergeant Unknown Stone; Corrections Officers Unknown Rucker, Unknown McGlone, Unknown Amowolo, Unknown Jones, Unknown Baum, Unknown Dankfert, and John Doe; Registered Nurse/Health Unit Manager Nicki Monroe; Registered Nurse/Nurse Supervisor Jack Bellinger; Nurse Practitioner Unknown Dalton; and Registered Nurses Addie Briske, Caudi Mason, and Unknown Daukfest.

Plaintiff alleges that on March 22, 2020, he filed a grievance "against housing unit 3 staff members that alleged general harassment." (ECF No. 1-3, PageID.15.)

Two months later, on May 20, 2020, Plaintiff was in the dayroom for recreation when Defendant Rucker announced over the PA system: "Tough guys aren't supposed to write grievances Owens, we'll see how tough you are." (*Id.*) Shortly thereafter, Plaintiff was returning to his cell after recreation when Defendant Rucker closed Plaintiff's cell door, striking Plaintiff in the chest. (*Id.*) Defendant Rucker "kept the cell door's motor running for about ten seconds,

pinning [P]laintiff, with his back against the protruding groove of the door jam[b] as the cell door was pushing into [his] chest." (*Id.*) Plaintiff yelled out in pain, and other inmates yelled and waved their arms to get Defendants Rucker and McGlone's attention. (*Id.*, PageID.16.) Defendant McGlone "was standing outside of the unit bubble station and did not intervene." (*Id.*) During this time, Defendant Rucker stated over the PA system: "Owens, you do all that exercising but can't get the door off of you?" (*Id.*) Plaintiff claims that he had not "threaten[ed] the officers in any fashion or [broke] any prison rules." (*Id.*)

Petitioner filed a grievance regarding Rucker's use of excessive force. (Id., PageID.21.)

The rest of Petitioner's allegations relate to an eighteen-month period after Rucker's use of excessive force and fall into three categories: (1) Plaintiff's claims that healthcare providers failed to provide appropriate treatment for the injuries he sustained to his back; (2) Plaintiff's claims that other Defendants retaliated against Plaintiff for filing the grievance against Defendant Rucker; and (3) Plaintiff's claims that other Defendants assaulted Plaintiff. The only claims against Defendants Rucker and McGlone, however, relate to "the physical and emotional injuries sustained as a result of the plaintiff's assault." (ECF No. 1-4, PageID.46.) Plaintiff seeks compensatory and punitive damages from Defendants Rucker and McGlone. (ECF No. 1-4.)

## II.    Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will

arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

4

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims turn out to be frivolous. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court will look to the first clear factual allegations to determine which portions of the action should be considered related. Plaintiff's first claim, chronologically and as presented in the complaint, relates to Defendant Rucker shutting him in the cell door on May 20, 2020. (ECF No. 1-3, PageID.15–16.) Plaintiff contends that Defendant McGlone did not intervene in the

use of force by Defendant Rucker. (*Id.*, PageID.16.) Plaintiff raises no other claims against Defendants Rucker or McGlone. (ECF No. 1-4, PageID.44–54.)

Plaintiff does not allege that the other Defendants participated in, or are somehow liable for, Defendant Rucker's use of force. Instead, with regard to the other Defendants, Plaintiff complains that they failed to provide proper medical care, retaliated against him for filing a grievance against Defendant Rucker (or other officers), or assaulted him months later. The fact that Plaintiff asserts that some of their conduct was in retaliation for his grievances and complaints regarding the incidents noted above does not automatically grant him leave to join unrelated claims together. After all, the prison context, any adverse incident experienced by a prisoner could be claimed to be retaliation; however, such incidents are not necessarily transactionally related. Moreover, the fact that Plaintiff experienced chronic back pain throughout the time period at issue does not automatically grant him leave to join unrelated claims concerning the denial of medical care.

Because the Court has concluded that Plaintiff has improperly joined Defendants Briske, Mason, Bellinger, Monroe, Holden, Thomas, Johnson, Stone, Amowolo, Jones, Daukfest, Dalton, Clouse, Miseta, Burgess, McCary, Baum, Unknown Party (named as John Doe), and Dankfert to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826,

832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which

a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges that the misjoined Defendants engaged in conduct in 2020 and 2021. (ECF No. 1-3.) Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *see Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against the misjoined Defendants, and he will not suffer gratuitous harm if these Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Briske, Mason, Bellinger, Monroe, Holden, Thomas, Johnson, Stone, Amowolo, Jones, Daukfest,

Dalton, Clouse, Miseta, Burgess, McCary, Baum, Unknown Party (named as John Doe), and Dankfert from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Carney*, 2008 WL 485204, at *3. If Plaintiff wishes to proceed with his claims against the dismissed Defendants, he shall do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[1]

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

---

[1] Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's claims against Defendants Rucker and McGlone remain. Construing Plaintiff's complaint liberally, the Court concludes that Plaintiff attempts to state an Eighth Amendment claim against Defendants Rucker and McGlone and a First Amendment retaliation claim against Defendant Rucker.

### A.    First Amendment Retaliation Claims

Plaintiff's complaint suggests that on May 20, 2020, Defendant Rucker shut Plaintiff in the cell door in retaliation for grievances Plaintiff had submitted against housing unit staff members about "general harassment." (ECF No. 1-3, PageID.15.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff alleges that he engaged in protected activity when he filed a grievance during March of 2020.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Here, Defendant Rucker's use of force when he shut Plaintiff in the cell door qualifies as adverse action for purposes of a retaliation claim. Moreover, Plaintiff specifically alleges that about 20 minutes prior to shutting Plaintiff in the cell door, Defendant Rucker announced over the PA system: "Tough guys aren't supposed to write grievances Owens, we'll see how tough you are." (*Id.*, PageID.15.) The statement Plaintiff attributes to Defendant Rucker supports an inference that Defendant Rucker's actions were retaliatory for Plaintiff's filing of a grievance. Plaintiff, therefore, has adequately alleged First Amendment retaliation claims against Defendant Rucker.

### B.    Eighth Amendment Claims

#### 1.    Excessive Force

Plaintiff claims further that Defendant Rucker used excessive force when he intentionally shut Plaintiff in his cell door. (ECF No. 1-3, PageID.15.) The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

Defendant Rucker closed the cell door, striking Plaintiff in the chest. (ECF No. 1-3, PageID.15.) Defendant Rucker kept the cell door's motor running, pinning Plaintiff "with his back against the protruding groove of the door jam[b] as the cell door was pushing into [his] chest."

(*Id.*) Plaintiff claims that during this, Defendant Rucker stated over the PA system: "Owens, you do all that exercising but can't get the door off of you?" (*Id.*, PageID.16.) From these allegations, the Court concludes that Plaintiff has sufficiently stated an Eighth Amendment excessive force claim against Defendant Rucker.

### 2.    Failure to Intervene

Plaintiff contends that Defendant McGlone failed to intervene and stop Defendant Rucker's use of force. (*Id.*) He alleges that while Defendant Rucker was shutting the cell door on him, Defendant McGlone was "standing outside of the unit bubble station." (*Id.*) Plaintiff claims further that he was yelling for help and that other inmates were yelling and waving their arms to tell Defendants Rucker and McGlone that Plaintiff was shut in the cell door. (*Id.*)

An officer is liable for another officer's use of excessive force where the defendant "observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *accord Alexander v. Carter ex. rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).  "[T]he Sixth Circuit has repeatedly held that officers are not liable under failure-to-intervene claims when the ostensible opportunity and means to intervene does not last long enough for the officer to both perceive what was going on and intercede to stop it." *LaPlante v. City of Battle Creek Mich.*, 30 F.4th 572, 582 (6th Cir. 2022) (quoting *Pelton v. Perdue*, 731 F. App'x 418, 426 (6th Cir. 2018)) (internal quotes omitted).  While Plaintiff's allegations indicate that the incident with Defendant Rucker lasted for about ten seconds, he does allege that Defendant McGlone was present at the unit bubble station and did nothing to stop Defendant Rucker.  While Plaintiff has by no means

proven deliberate indifference at this stage of the proceedings, the Court concludes that he has set forth a plausible Eighth Amendment failure to intervene claim against Defendant McGlone.

### Conclusion

Having reviewed Plaintiff's complaint under Rule 21 of the Federal Rules of Civil Procedure, and concluded that certain parties are misjoined, the Court will drop as parties Defendants Briske, Mason, Bellinger, Monroe, Holden, Thomas, Johnson, Stone, Amowolo, Jones, Daukfest, Dalton, Clouse, Miseta, Burgess, McCary, Baum, Unknown Party (named as John Doe), and Dankfert and dismiss without prejudice Plaintiff's claims against them.

Having conducted the review required by the PLRA, Plaintiff's Eighth Amendment excessive force claim and First Amendment retaliation claim against Defendant Rucker, and his Eighth Amendment failure to intervene claim against Defendant McGlone, remain in the case.

An order consistent with this opinion will be entered.


Dated:   June 6, 2022                          /s/ Hala Y. Jarbou
                                               HALA Y. JARBOU
                                               UNITED STATES DISTRICT JUDGE